UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Douglas Bley, Steve Adams, Joanne Sobelman, and Jeffrey L. Wood, on their own behalf and on behalf of others similarly situated,

Plaintiffs,

v.

MEMORANDUM OPINION
And ORDER
Civil No. 01-661(MJD/SRN)

ClickShip Direct, Inc., a Minnesota corporation; and DAMARK INTERNATIONAL, INC., d/b/a Provell, a Minnesota corporation,

Defendants.

---

Seymour J. Mansfield, V. John Ella, Mansfield, Tanick & Cohen, P.A., and Susan M. Coler, Sprenger & Lang, PLLC for and on behalf of Plaintiffs.

Barbara Jean D'Aquila, John J. Laravuso, Flynn & Gaskins, L.L.P. for and on behalf of Defendants.

---

Factual Background

Damark International, Inc., d/b/a Provell, is a Minnesota corporation engaged in the business of mass-marketing consumer goods and membership services through catalog sales, telemarketing and e-commerce. ClickShip Direct is a wholly-owned subsidiary and an inactive division of Provell, that provided outsourcing of order fulfillment and customer care services through its Brooklyn Park Fulfillment Center. At one point in



FILED DEC 12 2001
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD________
DEPUTY CLERK________

time. ClickShip was going to be spun-off as a separate entity. but instead the plant was closed. Prior to the shutdown, 100 employees worked at ClickShip.

Plaintiffs allege that prior to the shutdown, Damark negotiated a sale and lease back of the property in Brooklyn Park, netting over $11.7 million. Plaintiffs further allege that rather than put this money into ClickShip, it funneled the money to Provell. Damark then announced in December 2000 that it intended to sell ClickShip. Not longer afterward, Damark sent out notices that it would cancel all contracts within 90 days.

On January 30, 2001, employees of ClickShip received a memorandum notifying them of the Plant Closing, and further notifying them that their employment would end on March 31, 2001. Complaint, Ex. A. The notice was also intended to serve as the appropriate notification pursuant to the Worker Adjustment and Retraining Act ("WARN"), 29 U.S.C. § 2101 et. seq., which required Damark to give the ClickShip employees 60 days advance notice of the closing and the termination of their employment. Id.

On February 24, 2001, employees received another notice which informed them that their employment was going to be terminated effectively February 24, 2001. Complaint, Ex. B. The notice further provided that is was forced to order the closing prior to the end of the 60 day period required by WARN because the company couldn't make the necessary financial arrangements to do so. Id.

Plaintiffs assert that many of the ClickShip employees were participants in ClickShip's Incentive Plan (the "Plan"). See, Letak Affidavit, Ex. A. The purpose of the Plan was to assist the company in achieving goals in the areas of acquiring new business,

delivery of critical information and operational excellence. Id. The Plan provided for specific criteria to measure the accomplishment of each employee toward the stated goals. The Plan further provided that payment for achieved goals would be made on or before February 28, 2001. Id. The Plan further provided that if an employee was terminated prior to that date, voluntarily or involuntarily, no payment would be made thereunder. Id. Finally, the Plan included a provision in which the Board of Directors reserved the right to amend or terminate the Plan, "as determined by the Board of Directors based on factors which the Board considers appropriate for the year." Id.

Plaintiffs allege that when ClickShip employees were notified that they would be terminated effective February 24, 2001, Defendants violated the WARN Act, and breached the specific terms of the Plan. In their Complaint, Plaintiffs allege three causes of action: violation of the WARN Act, breach of contact, and violation of Minn. Stat. § 181.13. Before the Court is Defendants' motion to dismiss or in the alternative summary judgment with respect to the breach of contract claim (CountII) and the violation of Minn. Stat. § 181.13 claim. (Count III).

Count II

It is Plaintiffs' position that the Incentive Plan was a unilateral contract that Defendants' breached by terminating the employees prior to February 28, 2001; the payout date provided in the Plan. Defendants argue that dismissal of Count II is appropriate as the Incentive Plan did not create a unilateral contract because its terms were not sufficiently definite. Defendants note that the Incentive Plan contained a reservation clause that vested discretion with the Board of Directors to amend or

terminate the Plan based on factors the Board deemed appropriate. Defendants thus argue that where an incentive plan vests discretion in the Board of Directors, the incentive plan is not sufficiently definite to form a unilateral contract. In support, Defendants cite to Grenier v. Air Express Int'l Corp., 132 F.Supp. 2d 1198, 1200 (D. Minn. 2001), in which the court held, applying Minnesota law, that the incentive plan at issue, which provided the company complete discretion to determine what business qualified for the incentive program, was not sufficiently definite to create a unilateral contract. Defendants also cite to Martens v. Minnesota, Mining & Manufacturing Company, 616 N.W.2d 732 (Minn. Ct. App. 2000). In Martens, the court reviewed a dual ladder system for compensating and promoting technical employees. After reviewing that system, the court held that the employer had only provided a general description of the system; there were no provisions that entitled an employee to a specific amount of pay, benefit level or condition of employment. Id., at 743 -744.

Plaintiffs argue that Grenier and Martens are distinguishable because the incentive program in this case is very definite as to what would qualify for incentive payments. The Court agrees. Pursuant to Minnesota law, a unilateral contract is formed when there is an offer, that is communicated to and accepted by the offeree, for valuable consideration. Pine River State Bank v. Mettille, 333 N.W.2d 622, 626 (Minn. 1983). The offer must be definite in form. Id. "Whether a proposal is meant to be an offer for a unilateral contract is determined by the outward manifestations of the parties, not by their subjective intentions." Id. In this case, the Plan includes definite terms. Addendums A and B to the Plan list the specific criteria to measure accomplishment of the

goals. In addition, there appears to be no dispute that the Plan was communicated to and accepted by the ClickShip employees. Further, Plaintiffs allege that there can be no dispute that two of the three goals have been met. Therefore, based on the specific terms of the Plan, the amount of bonus each employee is entitled to under the Plan can be readily discerned.

Defendants nonetheless argue that Count II must be dismissed because Plaintiffs cannot show that the Plan was breached. This assertion is based on the provision in the Plan which provides the Board of Directors discretion to amend or terminate the Plan as they see fit. The fact that the Board of Directors have reserved the discretion to amend or terminate the Plan is not dispositive, however. In Vigoro Industries, Inc. v. Crisp, 82 F.3d 785, 791 (8th Cir. 1996), the Eighth Circuit held that when a contract term leaves a decision to the discretion of one party, that decision is virtually unreviewable, unless that party is charged with fraud, bad faith or grossly mistaken exercise of judgment. In this case, Plaintiffs allege that Defendants terminated them when they did to avoid the payout - which may be construed as bad faith. Accordingly, dismissal is not warranted.

Plaintiffs oppose Defendants' motion for summary judgment, as Defendants have not yet answered the complaint, and no discovery has taken place. Plaintiffs argue that material issues of fact exists as to Defendants' motive in terminating them at the time, and in the manner, in which it did. As discovery has not yet taken place, the Court finds that summary judgment at this time is inappropriate.

Count III

In Count III of their Complaint, Plaintiffs allege that they made a demand for earned yet unpaid wages pursuant to Minn. Stat. § 181.13, and that Defendants did not comply as required by statute. Minn. Stat. § 181.13(a) provides discharged employees a right to immediate payment of wages and commissions earned and unpaid. If such wages and commission are not paid within 24 hours of demand, the discharged employee may "charge and collect the amount of the employee's average daily earnings at the rate agreed upon in the contract of employment, for each day up to 15 days . . .". Plaintiffs allege that they are entitled to those wages they would have earned, but for the WARN Act violation, benefits and to the bonuses due under the Plan.

Defendants argue that dismissal of Count III is appropriate, as that claim is preempted by the WARN Act. The WARN Act provides that "[a]n employer shall not order a plant closing or mass layoff until the end of a 60-day period after the employer serves written notice of such an order . . . to each affected employee." 29 U.S.C. § 2102(a). An employer found to have violated this Act is liable to the employee for back pay, and benefits under an employee benefit plan, up to a maximum of 60 days. § 2104(a). The remedies provided in this section are the exclusive remedies for a violation of WARN. § 2104(b). The WARN Act further provides that:

> [t]he rights and remedies provided to employees by this chapter are in addition to, and not in lieu of, any other contractual or statutory rights and remedies of the employees, and are not intended to alter or affect such rights and remedies, except that the period of notification required by this chapter shall run concurrently with any period of notification required by contract or by any other statute.

Plaintiffs argue that the rights and remedies created by Minn. Stat. § 181.13 are

independent of the underlying basis on which the employees claim that wages are due. therefore such claim is not preempted.

The Eighth Circuit has not yet ruled on the scope of the WARN Act's preemption clause. In reviewing those opinions that have addressed WARN Act preemption, the Court finds that the opinion of the Seventh Circuit is persuasive. "When the substantive basis for a claim is the WARN Act, the sole remedies available are those provided in § 2104(b). On the other hand, claims based on the same set of facts, yet arising out of another substantive right, are not preempted pursuant to § 2105." In Re Bluffton Casting Corporation, 186 F.3d 857, 861 (7th Cir. 1999).

In this case, Plaintiffs' claims under Count III arise under both the WARN Act and the Plan. Therefore, to the extent the claim arises under the WARN Act, Count III must be dismissed as preempted by the WARN Act. However, to the extent that Plaintiffs' claims under Minn. Stat. § 181.13 are based on the claim for incentive payments due them under the Plan, preemption does not apply.

IT IS HEREBY ORDERED that Defendants' Motion to Dismiss, or in the Alternative for Summary Judgment is GRANTED in part and DENIED in part. Count III, to the extent such claim is based on a violation of the WARN Act, is dismissed.

Date: 12-12-01

Michael J. Davis
United States District Court

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.